**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF KANSAS**

| | |
|---|---|
| WILLIAM DICKERSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| UNIFIED GOVERNMENT OF WYANDOTTE | ) |
| COUNTY, KANSAS, | ) |
| | ) |
| and | ) |
| | ) |
| CITY OF KANSAS CITY, KANSAS, | ) |
| | ) |
| and | ) |
| | ) |
| CHIEF OF POLICE KARL OAKMAN, | ) |
| *in his individual capacity,* | ) |
| | ) |
| and | ) |
| | )   Case No. _____ |
| UNIFORMED OFFICER I, | ) |
| *in his individual capacity,* | ) |
| | ) |
| and | ) |
| | ) |
| UNIFORMED OFFICER II, | ) |
| *in his individual capacity,* | )   REQUEST FOR JURY TRIAL |
| | ) |
| and | ) |
| | ) |
| UNIFORMED OFFICER III, | ) |
| *in his individual capacity,* | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

COMES NOW Plaintiff William Dickerson ("Plaintiff"), by and through his undersigned

attorneys, and for his Complaint against Defendants Unified Government of Wyandotte County,

Kansas, City of Kansas City, Kansas, Chief of Police Karl Oakman, Uniformed Officer I,

Uniformed Officer II, and Uniformed Officer III (hereinafter collectively "Defendants"), alleges

1

and states as follows:

## Parties and Jurisdiction

1.     Plaintiff is, and at all times pertinent to this complaint was, a citizen of the United States.

2.     Upon information and belief, Defendant Unified Government of Wyandotte County, Kansas (hereinafter "Defendant UG") was created by and established under the law of the state of Kansas in 1997. It is authorized to be sued in its own name. It is a subdivision of the state of Kansas, organized and existing under the laws of Kansas.

3.     Defendant City of Kansas City, Kansas (hereinafter "Defendant City") is, and at all times pertinent to this Complaint was, a subdivision of the state of Kansas, organized and existing under the laws of Kansas.

4.     Upon information and belief, Defendant UG and Defendant City are responsible for the supervision, management, and control of the Kansas City Kansas Police Department (hereinafter "KCKPD"), through which Defendant UG and Defendant City fulfill their policing functions.

5.     Upon information and belief, Defendant Chief of Police Karl Oakman (hereinafter "Defendant Oakman") was the Chief of Police of the KCKPD at all times relevant to this Complaint, including on or about June 10, 2021.

6.     Upon information and belief, Defendant Uniformed Officer I, Defendant Uniformed Officer II, and Defendant Uniformed Officer III (hereinafter, collectively, the "Uniformed Defendants"), are, and at all times pertinent to this Complaint were, uniformed officers employed by Defendant UG and Defendant City as part of the KCKPD.

7.     Upon information and belief, Defendant Oakman was at all times material hereto a citizen of the United States and the state of Kansas.

2

8.     Upon information and belief, Defendants Uniformed Officer I, II and III were at all times material hereto employed by Defendant UG and Defendant City as duly appointed and sworn police officers, and were acting in their individual capacities and/or under color of state law, and within the scope of their employment.

9.     Upon information and belief, Defendants Uniformed Officer I, II and III are and were at all times hereto citizens of the United States and the state of Kansas.

10.     Upon information and belief, at all relevant times, Defendants Uniformed Officers I, II and III acted under the supervision and management of Defendant UG and Defendant City.

11.     This is an action for the violation of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983.

12.     All the unlawful acts and practices set forth below were committed within Wyandotte County, Kansas. Jurisdiction and venue are proper in the United States District Court District of Kansas pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1391.

## General Allegations Common to All Counts

13.     Plaintiff is an African American male.

14.     On June 10, 2021, Plaintiff was standing in the private parking lot of The Hampton Inn Kansas City The Legends in Kansas City, Kansas located at 1400 Village West Parkway, Kansas City, KS 66111, with hotel guests where Plaintiff and the guests was grilling food and socializing.

15.     Plaintiff and his friends were told by a woman at the hotel that the police had been called due to a report of person with a gun.

16.     Plaintiff and his party did not have any guns on their person or in their vehicles.

17.     After the two police vehicles arrived at Plaintiff's location, more than one of the Uniformed Defendants approached Plaintiff.

18.     The Uniformed Defendants did not approach anyone other than Plaintiff.

19.     Without provocation or warning, the Uniformed Defendants aggressively began putting their hands on Plaintiff and placed him in handcuffs.

20.     The Uniformed Defendants asked Plaintiff if he had a baseball bat or a gun.

21.     Plaintiff answered that he did not.

22.     Plaintiff was forced to sit down on the curb while in handcuffs.

23.     Plaintiff informed the Uniformed Defendants that he had go to the restroom, as he had to urinate.

24.     Plaintiff continued to request the Uniformed Defendants allow him to go to the restroom, but was ignored by the Uniformed Defendants.

25.     Eventually, Plaintiff stood up, as he could not hold his bladder any longer and was forced to urinate on himself.

26.     While Plaintiff was standing, one of the Uniformed Defendants physically picked up Plaintiff and slammed him down to the ground.

27.     A Uniformed Defendant pushed Plaintiff's face down onto the concrete cutting his lip and chipping his tooth.

28.     Plaintiff was yelling and screaming from pain and for help.

29.     Around that time, an emergency medical technician ("EMT") arrived in an ambulance.

30.     The EMT approached Plaintiff laying on the ground in handcuffs and clearly in distress.

31.     The EMT spoke with the Uniformed Defendants and did not immediately provide medical care to Plaintiff.

32.     Plaintiff was in handcuffs, had not been acting erratic or threatening and had not been resisting or threatening the Uniformed Defendants.

33.     One of the Uniformed Defendants slammed Plaintiff against the concrete and used his arm to hold him in place.

34.     Plaintiff felt his mouth begin to bleed.

35.     Plaintiff began to feel dizzy and lose consciousness.

36.     Plaintiff continued to drift in and out of consciousness.

37.     Plaintiff fully awoke at Providence Medical Center when he was being catharized.

38.     Plaintiff was hospitalized for two (2) days.

39.     Plaintiff suffered numerous abrasions and bruises, as well as a chipped tooth.

40.     Plaintiff also suffered emotional injury including but not limited to, fear, embarrassment, humiliation, stress, anxiety, and sadness.

41.     Throughout the incident described above, Plaintiff did not exhibit behavior which would constitute a threat to the police.

42.     Throughout the situation, the Uniformed Officers failed to carry out an appropriate or reasonable response.

43.     Plaintiff did not exhibit behavior that a police officer could perceive as being a threat to themselves or others.

44.     The facts and circumstances were insufficient to warrant a reasonable officer to believe that a violation of law had been or was being committed.

45.     The Uniformed Defendants did not have probable cause to place Plaintiff under arrest.

46.     Plaintiff was met with excessive force and sustained injuries as a result of the

actions of the Uniformed Defendants.

47.     Throughout the situation, Plaintiff was not free to leave.

48.     The Fourth Amendment prohibits the use of deadly force in non-deadly circumstances which do not pose an immediate threat of serious bodily injury and/or death.

49.     It has long been known by the law enforcement community that the slamming a person's head into the concrete pavement could lead to permanent brain damage or death.

50.     Upon information and belief, Defendant UG and Defendant City's officers regularly used excessive force on passively resisting or non-resisting arrestees.

51.     Upon information and belief, Defendant UG and Defendant City know of such use of excessive force and either expressly or implicitly approve of such use.

52.     Upon information and belief, Defendant UG and Defendant City have known for decades that their officers conduct illegal as described herein, but have failed to adequately remedy the situation through training, discipline, supervision, hiring, and/or changes to polices, practices, or customs.

## COUNT I – UNLAWFUL SEIZURE, 42 U.S.C. § 1983

53.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

54.   The Uniformed Defendants "seized" Plaintiff by grabbing him and placing him in handcuffs.

55.     The Uniformed Defendants "seized" Plaintiff by grabbing him and slamming him to the ground.

56.     The Uniformed Defendants "seized" Plaintiff by slapping and pushing his face to the ground.

57.     The Uniformed Defendants "seized" Plaintiff by using deadly force in slamming

his head into the concrete parking lot and rendering him unconscious.

58.     The Uniformed Defendants did not have a reasonable suspicion that Plaintiff had committed, was committing, or was about to commit a crime.

59.     Any interest the Uniformed Defendants may have had in carrying out the above-described acts to fulfill their "community caretaking function" was far outweighed by Plaintiff's interest in being subjected to the government intrusion imposed upon him by those seizures.

60.     The detention by the Uniformed Defendants of Plaintiff in the above-described acts was objectively unreasonable and violated clearly established law.

61.     During the actions described herein, each of the Uniformed Defendants had a duty to intervene on behalf of Plaintiff, who was a citizen whose constitutional rights were being violated in their presence by another officer.

62.     Upon information and belief, the Uniformed Defendants all recognized that excessive and unreasonable force was being used.

63.     The Uniformed Defendants each observed and were in a position to intervene to stop the Uniformed Defendants' use of constitutionally unreasonable force against Plaintiff.

64.     In all of the actions stated herein, the Uniformed Defendants were acting under color of law.

65.     These actions violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

66.     As a direct and proximate result of these violations of Plaintiff's constitutional rights, Plaintiff was injured both physically and emotionally.

67.     Punitive damages are available against the Uniformed Defendants and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

68.     Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

69.     The Uniformed Defendants acted outrageously, willfully, wantonly, maliciously and oppressively, with evil motive and reckless and complete indifference to, and in conscious disregard for the safety and rights of Plaintiff and others similarly situated, entitling Plaintiff to exemplary and punitive damages in amounts to be proven at trial.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, jointly and severally, for economic damages including, but not limited to: actual, emotional, and compensatory damages, for punitive damages, for reasonable attorney's fees and costs incurred herein, for pre-and post-judgment interest as allowed by law and for any further legal and equitable relief as this Court deems just and proper.

## COUNT II – FALSE ARREST, 42 U.S.C. § 1983

70.     Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

71.     The Uniformed Defendants handcuffed Plaintiff and would not allow him to leave.

72.     The Uniformed Defendants slammed Plaintiff to the ground and pinned his head to the ground.

73.     Upon information and belief, the Uniformed Defendants ordered Plaintiff held in custody at Providence Medical Center.

74.     The above-described conduct constituted an arrest of Plaintiff.

75.     The Uniformed Defendants did not have a reasonable suspicion that Plaintiff had committed, was committing, or was about to commit a crime.

76.     The detention by the Uniformed Defendants of Plaintiff in the above-described acts was objectively unreasonable and violated clearly established law.

77.     The Uniformed Defendants unlawfully placed Plaintiff under arrest.

78.     The Uniformed Defendants did not have probable cause to arrest Plaintiff.

79.     During the actions described herein, each of the Uniformed Defendants had a duty to intervene on behalf of Plaintiff, who was a citizen whose constitutional rights were being violated in their presence by another officer.

80.     Upon information and belief, the Uniformed Defendants all recognized that excessive and unreasonable force was being used and that a false arrest was being effectuated.

81.     The Uniformed Defendants each observed and were in a position to intervene to stop the Uniformed Defendants' unlawful arrest of Plaintiff.

82.     In all of the actions stated herein, the Uniformed Defendants were acting under color of law.

83.     These actions violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

84.     As a direct and proximate result of these violations of Plaintiff's constitutional rights, Plaintiff was injured both physically and emotionally.

85.     Punitive damages are available against the Uniformed Defendants and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

86.     Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

87.     The Uniformed Defendants acted outrageously, willfully, wantonly, maliciously and oppressively, with evil motive and reckless and complete indifference to, and in conscious disregard for the safety and rights of Plaintiff and others similarly situated, entitling Plaintiff to exemplary and punitive damages in amounts to be proven at trial.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against

Defendants, jointly and severally, for economic damages including, but not limited to: actual, emotional, and compensatory damages, for punitive damages, for reasonable attorney's fees and costs incurred herein, for pre-and post-judgment interest as allowed by law and for any further legal and equitable relief as this Court deems just and proper.

<u>**COUNT III – EXCESSIVE USE OF FORCE, 42 U.S.C. § 1983**</u>

88.      Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

89. The Uniformed Defendants "seized" Plaintiff by immediately placing him in handcuffs, taking control of his person and forcing him to sit on the ground.

90.      The Uniformed Defendants "seized" Plaintiff by using deadly force in slamming his head into the concrete parking lot and rendering him unconscious.

91.      The Uniformed Defendants "seized" Plaintiff by slamming and pinning him to the concrete parking lot.

92.      Upon information and belief, the Uniformed Defendants ordered Plaintiff held in custody at Providence Medical Center.

93.      The above-described conduct constituted an arrest of Plaintiff.

94.      The Uniformed Defendants did not have a reasonable fear of imminent bodily harm when they took the above-stated actions against Plaintiff.

95.      The use of force in the above-described acts was objectively unreasonable and violated clearly established law.

96.      The Uniformed Defendants did not need to use force, and especially did not need to use deadly force, in this situation.

97.      The Uniformed Defendants did not have a reasonable fear of imminent bodily harm when they slammed Plaintiff onto the ground, smashed him headfirst into the concrete, and

restrained him.

98.     The Uniformed Defendants did not have a reasonable fear of imminent bodily harm when they threw Plaintiff to the ground and smashed his face into the concrete, all the while he was in handcuffs.

99.     In all the above actions, the use of force was excessive because it was not reasonably necessary to arrest the Plaintiff or take the Plaintiff into custody or stop the Plaintiff for investigation.

100.     Every reasonable officer would have known that using the force described herein against an individual who was not posing a threat to himself or others, was not resisting arrest, and was being compliant  constitutes excessive force in violation of the Fourth Amendment.

101.      Every reasonable officer would have known that using the force described herein against a handcuffed individual who is not resisting arrest and not otherwise being a threat to himself or others constitutes excessive force in violation of the Fourth Amendment.

102.     During the actions described herein, each of the Uniformed Defendants had a duty to intervene on behalf of Plaintiff, who was a citizen whose constitutional rights were being violated in their presence by another officer.

103.     Upon information and belief, the Uniformed Defendants all recognized that excessive and unreasonable force was being used.

104.     The Uniformed Defendants each observed and were in a position to intervene to stop the Uniformed Defendants' use of constitutionally unreasonable force against Plaintiff.

105.     In all of the actions stated herein, the Uniformed Defendants were acting under color of law.

106.     These actions violated Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.

107.    As a direct and proximate result of these violations of Plaintiff's constitutional rights, Plaintiff was injured both physically and emotionally.

108.    Punitive damages are available against the Uniformed Defendants and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

109.    Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

110.    The Uniformed Defendants acted outrageously, willfully, wantonly, maliciously and oppressively, with evil motive and reckless and complete indifference to, and in conscious disregard for the safety and rights of Plaintiff and others similarly situated, entitling Plaintiff to exemplary and punitive damages in amounts to be proven at trial.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, jointly and severally, for economic damages including, but not limited to: actual, emotional, and compensatory damages, for punitive damages, for reasonable attorney's fees and costs incurred herein, for pre-and post-judgment interest as allowed by law and for any further legal and equitable relief as this Court deems just and proper.

## COUNT IV – SUPERVISORY AND MUNICIPAL LIABILITY, 42 U.S.C. § 1983 (*MONNELL*)

111.    Plaintiff hereby re-alleges and incorporates by reference the allegations contained in the above-stated paragraphs.

112.    The Uniformed Defendants, acting under the supervision of Defendant UG and Defendant City, violated Plaintiff's constitutional rights as specified in the above-stated paragraphs.

113.    Upon information and belief, the Mayor of Defendant UG and Defendant City, the City Council of Defendant UG and Defendant City, and Defendant Oakman have final policymaking authority with regard to establishing written policies and training programs

governing the conduct of KCKPD officers performing policing functions on behalf of Defendant UG and Defendant City.

114.    Upon information and belief, the Mayor of Defendant UG and Defendant City, the City Council of Defendant UG and Defendant City, and Defendant Oakman established and/or approved of KCKPD's written policies and training governing the conduct of KCKPD officers performing policing functions.

115.    Upon information and belief, there is a decades-long pattern of unconstitutional acts by Defendant City's KCKPD employees using excessive force, making unlawful seizures, and making unlawful arrests.

116.    Upon information and belief, this pattern includes use of excessive force, unlawful seizures, and unlawful arrests by Defendant UG and Defendant City's officers against those who are African American.

117.    Defendant UG, Defendant City and Defendant Oakman, at all times pertinent to this Complaint, were aware of this pattern.

118.    Upon information and belief, Defendant UG, Defendant City, and Defendant Oakman, made a deliberate and/or conscious decision to disregard the known risk of harm that would result from the unconstitutional patterns and practices and were deliberately indifferent to and/or tacitly authorized the same.

119.    Defendant UG, Defendant City and Defendant Oakman's training practices were inadequate to prevent a continuation of this pattern.

120.    Defendant UG, Defendant City and Defendant Oakman's supervision of the officers (including the Uniformed Defendants) was inadequate to prevent a continuation of this pattern.

121.    Defendant UG, Defendant City and Defendant Oakman's failure to discipline

officers who commit constitutional violations and/or misconduct was inadequate to prevent a continuation of this pattern.

122.    Defendant UG, Defendant City and Defendant Oakman's failure to adequately investigate instances of possible constitutional violations committed by officers was inadequate to prevent a continuation of this pattern.

123.    Defendant UG, Defendant City and Defendant Oakman, at all times pertinent to this Complaint, were deliberately indifferent in failing to adequately train and/or supervise and/or discipline the Uniformed Defendants and others, as well as were deliberately indifferent in investigating possible constitutional violations, such that the failure to train and/or supervise and/or discipline and/or investigate reflects a deliberate and conscious choice.

124.    Upon information and belief, Defendant UG and Defendant City had an unofficial policy and/or practice for their officers to use excessive force against individuals.

125.    Upon information and belief, Defendant UG and Defendant City had an unofficial policy and/or practice for their officers to unlawfully seize and/or arrest individuals.

126.    Upon information and belief, Defendant UG and Defendant City had an unofficial policy and/or practice in failing to discipline their officers for violations of policy and/or the law.

127.    Upon information and belief, Defendant UG and Defendant City had an unofficial policy and/or practice of failing to investigate possible constitutional violations or violations of policy by their officers.

128.    Upon information and belief, Defendant Oakman supported and/or ratified these unofficial policies.

129.    On or prior to June 10, 2021, Defendant UG, Defendant City and Defendant Oakman,

with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety of arrestees, detainees, and the like during arrest, including but not limited to the handcuffing and restraint process.

130.    On or prior to June 10, 2021, Defendant UG, Defendant City and Defendant Oakman, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that permitted its officers to use excessive force.

131.    On or prior to June 10, 2021, Defendant UG, Defendant City and Defendant Oakman, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that permitted its officers to effectuate unlawful seizures and/or arrests.

132.    On or prior to June 10, 2021, Defendant UG, Defendant City and Defendant Oakman, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers to turn a blind eye to and not intervene with the use of excessive force by KCKPD officers.

133.    On or prior to June 10, 2021, Defendant UG, Defendant City and Defendant Oakman, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers to turn a blind eye to and not intervene when unlawful seizures and/or arrests were being conducted by KCKPD officers.

134.    Upon information and belief, on or prior to June 10, 2021, Defendant UG, Defendant City and Defendant Oakman, with deliberate indifference to the rights of arrestees,

detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that violated those individual's rights, which shall be further identified in discovery.

135.    Upon information and belief, on or prior to June 10, 2021, Defendant UG, Defendant City and Defendant Oakman, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified improper and harmful training to officers.

136.    The unconstitutional policies, practices, and customs defined herein were the moving force behind Plaintiff's injuries and the depravation of his rights.

137.    Plaintiff was injured and his rights violated as a direct and proximate result of the acts and omissions by Defendant UG, Defendant City and Defendant Oakman.

138.    As a direct and proximate result of the acts and omissions described herein, Plaintiff suffered compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

139.    Punitive damages are available against Defendant Oakman and are hereby claimed as a matter of federal common law under *Smith v. Wade*, 461 U.S. 30 (1983).

140.    Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

141. In each instance, Defendant UG, Defendant City and Defendant Oakman acted under color of state law.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants for economic damages including, but not limited to: actual, emotional, and compensatory damages, for punitive damages against Defendant Halsey in his individual capacity, for reasonable attorney's fees and costs incurred herein, for pre-and post-judgment interest as

allowed by law and for any further legal and equitable relief as this Court deems just and proper.

## COUNT V – SUPERVISORY AND MUNICIPAL LIABILITY, 42 U.S.C. § 1983 (*CANTON*)

142.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

143.    Defendant UG and Defendant City failed to properly train or modify its training of the Uniformed Defendants and its other officers, including but not limited to, matters related to the reasonable and appropriate use of force during arrests, legal seizure, legal arrest, probable cause, intervention in the excessive use of force by fellow officers, racial profiling, in interacting with citizens.

144.    Effectuating an arrest, using force to effectuate an arrest, seizures, arrests, intervening in the use of force, and racial profiling are usual and recurring situations with which Defendant UG and Defendant City's law enforcement officers and other agents encounter on a regular basis.

145.    As such, Defendant UG and Defendant City were aware of a need for specific training to eradicate illegal conduct by their officers.

146.    Defendant UG and Defendant City were also aware of the need for training due to prior constitutional violations by their officers.

147.    Defendant UG and Defendant City were aware that deprivation of the constitutional rights of citizens was likely to result from lack of training and the failure to modify training.

148.    As such, Defendant UG and Defendant City were deliberately indifferent and exhibited reckless disregard with respect to the potential violation of constitutional rights.

149.    The failure to train and/or to appropriately modify training constituted official policies, practices, or customs of Defendant UG and Defendant City.

150.    Defendant UG and Defendant City's failure to train and/or to modify training was

behind the acts and omissions the Uniformed Defendants made toward Plaintiff.

151.    As a direct and proximate result of Defendant UG and Defendant City's acts and omissions, Plaintiff suffered injuries, experienced pain and suffering, and was deprived of his constitutional rights.

152.    As a direct and proximate result of the acts and omissions described herein, Plaintiff suffered actual, emotional, compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

153.    Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

154.    In each instance, Defendant UG and Defendant City acted under color of state law.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants, jointly and severally, for economic damages including, but not limited to: actual, emotional, and compensatory damages, for reasonable attorney's fees and costs incurred herein, for pre-and post- judgment interest as allowed by law and for any further legal and equitable relief as this Court deems just and proper.

## COUNT VI – 42 U.S.C. § 1983 FAILURE TO INTERVENE

155.    Plaintiff hereby incorporates and re-alleges all preceding paragraphs as though fully pleaded herein.

156.    By their conduct and under color of state law the Uniformed Defendants, acting under color of state law, had opportunities to intervene on behalf of Plaintiff to prevent the unlawful seizure, arrest, and excessive force he endured, but with deliberate indifference, declined to do so.

157.    The Uniformed Defendants' failure to intervene violated Plaintiff's clearly established constitutional rights as described herein.

158.     No reasonable police officer at the times relevant to this Complaint would have believed that failing to intervene to prevent the constitutional violations conducted by their fellow officers as discussed herein, were lawful.

159.     As a direct and proximate result of the Uniformed Officers' acts and omissions, Plaintiff suffered injuries, experienced pain and suffering, and was deprived of his constitutional rights.

160.     As a direct and proximate result of the acts and omissions described herein, Plaintiff suffered actual, emotional, compensatory and special damages as defined under federal common law and in an amount to be determined by jury.

161.     Plaintiff is entitled to recovery of costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

WHEREFORE, Plaintiff requests that the Court enter judgment in his favor and against Defendants for economic damages including, but not limited to: actual, emotional, and compensatory damages, for reasonable attorney's fees and costs incurred herein, for pre-and post-judgment interest as allowed by law and for any further legal and equitable relief as this Court deems just and proper.

## Demand for Jury Trial and Designation of Place of Trial

Plaintiff requests a trial by jury, in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully Submitted,
**EMPLOYEE RIGHTS LAW FIRM**

**Law Offices of Mark A. Jess, LLC**

/s/ Mark A. Jess

| | |
|---|---|
| Mark A. Jess | MO No. 37946 |
| Christie Jess | KS No. 78983 |

4 E. Franklin St.
Liberty, MO  64068
Ph:  816.474.4600
Fx.
mark.jess@employeerightslawfirm.com
christie.jess@employeerightslawfirm.com
www.employeerightslawfirm.com
*ATTORNEYS FOR THE PLAINTIFF*

*AND*


**EDELMAN, LIESEN & MYERS, L.L.P.**

By:  /s/ *Katherine E. Myers*
Katherine E. Myers, KS #25833
208 W. Linwood Blvd.
Kansas City, Missouri 64111
Telephone: (816) 533-4976
Facsimile:  (816) 463-8449
Email: kmyers@elmlawkc.com

**ATTORNEYS FOR PLAINTIFF**