IN THE UNITED STATES DISTRICT
COURT DISTRICT OF KANSAS

WILLIAM DICKERSON,                    )
                                      )
      Plaintiff,                      )
                                      )
v.                                    )   Case No. 23-2263-TC-ADM
                                      )
UNIFIED GOVERNMENT OF                 )
WYANDOTTE COUNTY, ET AL.,             )
                                      )
      Defendants.                     )
                                      )

**MEMORANDUM & ORDER AND
REPORT & RECOMMENDATION**

This case arises from an encounter between plaintiff William Dickerson ("Dickerson") and officers of the Kansas City, Kansas Police Department ("KCKPD"). Dickerson asserts claims under 42 U.S.C. § 1983 for unlawful seizure, false arrest, excessive use of force, supervisory and municipal liability, and failure to intervene. This case is now before the court on Dickerson's Motion for Leave to File His Second Amended Complaint. (ECF 31.) By way of this motion, Dickerson seeks leave to amend his complaint to correctly name two defendants—the Unified Government of Wyandotte County/Kansas City, Kansas ("the UG") and Michael York as the Interim Chief of Police ("York")—and to amend the previously unnamed "John Doe" defendants to instead name the individual KCKPD police officers and officials ("individual defendants") who were allegedly involved in the incident. For the reasons discussed below, Dickerson's motion is granted in part to the extent he seeks to correctly name the UG and York, but the court recommends that the district judge deny Dickerson's motion to amend as futile to the extent he seeks to name the other individual defendants.[1]

---

[1] The court issues this portion of its decision by way of a report and recommendation to the district judge because, to the extent the court denies a motion to amend solely on grounds of futility, the ruling is considered dispositive. *See Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir.

Also before the court is the UG's Motion to Stay Further Proceedings and Deadlines (ECF 20), by way of which the UG asks the court to stay all current deadlines pending the court's ruling on the UG's Motion to Dismiss Plaintiff's First Amended Complaint. For the reasons set forth below, this motion is denied.

I.      BACKGROUND

This case arises from an encounter between Dickerson and the KCKPD that occurred on June 10, 2021. Dickerson filed this lawsuit on June 8, 2023—just two days before the two-year statute of limitations expired. His original complaint asserted claims against (1) the Unified Government of Wyandotte County, Kansas; (2) the City of Kansas City, Kansas; (3) Chief of Police Karl Oakman; and (4) three John Doe officers. (ECF 1.) On June 20, Dickerson filed an amended complaint that replaced Karl Oakman as a named defendant with Interim Chief of Police Michael Young. (ECF 4.) On June 28, Dickerson's attorney emailed the UG's legal division asking if it would accept service of the amended complaint and summons against "the county of Wyandotte, City of Kansas City, KS, interim Police Chief Young and three unidentified uniformed police officers." (ECF 32, at 2; ECF 32-1.) The UG's legal division responded on July 6, directing counsel to serve the clerk with the summons and complaint "for the UG and the City and for Interim Chief York (not Young)" and declining to accept service on behalf of the unknown

_____

1999) ("The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim, a question this court reviews de novo."); *see, e.g.*, *Gardiner v. McBryde*, No. 15-3151-DDC-JPO, 2018 WL 6991101, at *1 n.3 (D. Kan. Oct. 5, 2018) (recommending the assigned district judge deny motion to amend as futile), *report and recommendation adopted*, No. 15-3151-DDC, 2018 WL 6715827 (D. Kan. Dec. 21, 2018); *Jackson v. Kan. Cnty. Ass'n Multiline Pool*, No. 03-4181-JAR, 2005 WL 3307215, at *1 (D. Kan. Dec. 6, 2005) (reviewing futility-based denial of motion to amend under de novo standard); *McCormick v. City of Lawrence, Kan.*, No. 02-2135-JWL, 2003 WL 158704, at *1 (D. Kan. Jan. 17, 2003) (same).

uniformed officers.  (ECF 32-1, at 3.)  On July 10, the summons and complaint were served on the three named defendants.  (ECF 32-3.)

On August 14, the UG filed a motion to dismiss in which it contends (among other things) that none of the three named defendants in the amended complaint are properly named. Specifically, the UG contends that (1) Michael York (not Michael Young) was the interim police chief at the time of the June 10 incident; (2) the "Unified Government of Wyandotte County, Kansas" has never existed; and (3) "City of Kansas City, Kansas" has not existed as a municipal corporation since 1997 when it consolidated with Wyandotte County to create the UG.  The UG contends that amending to replace the incorrect parties is not a mere technical amendment, and that Dickerson's "failure in identifying the parties he contends to be liable for this suit prior to the expiration of the statute of limitations should be fatal to his claims."  (ECF 7, 8.)

The UG served its Rule 26(a)(1) disclosures on Dickerson and participated in a scheduling conference with the court on November 17 and 29, respectively.  All the while, the UG maintained the improper naming arguments asserted in its pending motion to dismiss.  (ECF 18, at 1 & n.1.) On November 29, Dickerson served two interrogatories directed to defendants Unified Government of Wyandotte County, Kansas and the City of Kansas City, Kansas, seeking names of "each employee of Defendant who physically touched Plaintiff" during the June 10 incident and a description of the touching, as well as a description of the "specific interaction(s)" each individual "present at the scene described in ECF Doc. 1" had with Dickerson.  (ECF 19, 20-2.) The first paragraph of Dickerson's interrogatories stated that they "are propounded to . . . the entity which Defendants have stated is more properly described as: 'Unified Government of Wyandotte County/Kansas City, Kansas.'"  (ECF 20-2.)  The scheduling order stated the parties had agreed to exchange copies of the documents described in their Rule 26 initial disclosures by December

15, but the UG declined Dickerson's request to produce its "investigative file" and any other documents identified in its Rule 26 disclosures.  Instead, the UG told Dickerson that it could not, as a non-party, produce such documents or substantively respond to Dickerson's discovery requests seeking to identify the individuals involved in the incident at issue.  (ECF 32, at 3; ECF 38, at 3.)

On December 4, the UG filed the current motion to stay proceedings pending the court's ruling on its motion to dismiss.  The UG contends that Federal Rules of Civil Procedure 26(a)(1), 33, and 34 apply only to "a party"; that the UG is not "a party"; and that the UG therefore has no obligation to provide Rule 26 disclosure documents or answer Dickerson's discovery requests. (ECF 20.)  The UG reasons that, if the district judge grants the motion to dismiss, the case will be finally concluded; the facts sought through discovery will not affect resolution of the motion to dismiss; and any further discovery would be wasteful and burdensome.  (*Id*. ¶¶ 20-23.)

December 29 was the deadline for the parties to file any motions to amend the pleadings. (ECF 18, at 2.)  On that date, Dickerson filed a Motion for Leave to File His Second Amended Complaint.  (ECF 24.)  Dickerson did not attach a redlined version of the proposed amendment that shows all proposed changes to the pleading as required by D. Kan. Rule 15.1(a)(2), so the court ordered Dickerson to file a supplement to his motion attaching the redline.  (ECF 26.) Dickerson filed a supplement, but again did not include a redline, so the court struck the filing and denied the motion to amend without prejudice.  (ECF 28-29.)  Dickerson then filed the renewed Motion for Leave to File His Second Amended Complaint on January 9, 2024.  (ECF 31.)  By way of this motion, he seeks leave to amend his complaint to correctly name two defendants—the Unified Government of Wyandotte County/Kansas City, Kansas ("the UG") and Michael York as the Interim Chief of Police ("York")—and to amend the previously unnamed "John Doe"

defendants to instead name individual defendants Officer Johnell Daniels, Officer Patrick Fanning, Sergeant Carl Webb, Sergeant Michael Golden, Officer Daniel Albright, Officer Nathan Gumpert, and Captain John Diaz.

## II.      MOTION TO AMEND COMPLAINT

### A.      Legal Standard

The current motion was filed after the December 29 deadline to amend the pleadings. However, as explained above, Dickerson filed a first Motion to File a Second Amended Complaint on that deadline.  The court denied that first motion for failure to comply with D. Kan. Rule 15.1(a)(2), but the court denied the motion without prejudice.  (ECF 29.)  The next day, Dickerson filed a renewed Motion to File a Second Amended Complaint—this time, with a redline attached. (ECF 31.)  Based on this series of events, the court finds Dickerson was diligent in filing his renewed motion to amend (the current motion) soon after the deadline for amending the pleadings. Dickerson has therefore demonstrated good cause for filing the motion beyond the December 29 deadline.  Accordingly, the motion was timely for purposes of Rule 16 and the court will proceed to analyze it under the standard set forth in Fed. R. Civ. P. 15(a)(2).

This Rule states that a party "may amend its pleading only with the opposing party's written consent or the court's leave," which should be freely given "when justice so requires."  FED. R. CIV. P. 15(a)(2).  The purpose of this rule "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018) (internal quotations omitted).  The court may refuse leave to amend "only [upon] a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously

allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010);

*see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (same).

Practically speaking, the party opposing a motion to amend generally bears the burden to

demonstrate why the amendment should not be permitted.  *See Wilkerson*, 606 F.3d at 1267 (in

the absence of such a showing, amendment should be allowed); *Eminence Capital, LLC v. Aspeon,

Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (stating the party opposing amendment bears the burden

to show undue prejudice and that there is a presumption in favor of amendment absent such a

showing "or a strong showing of the remaining *Forman* factors").  Whether to grant a motion to

amend is within the court's sound discretion.  *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*,

771 F.3d 1230, 1240 (10th Cir. 2014).

### B.      Analysis

The UG contends the court should deny Dickerson's motion because his proposed

amendment is futile.  In support of this argument, the UG points to (and incorporates by reference)

the same arguments the UG advanced in support of its motion to dismiss.  A court may deny a

motion to amend as futile "if the proposed amendment could not have withstood a motion to

dismiss or otherwise fail[s] to state a claim."  *Schepp v. Fremont Cty., Wyo.*, 900 F.2d 1448, 1451

(10th Cir. 1990).  When analyzing a motion to dismiss, a court must "assume the truth of all well-

pleaded facts in the complaint and draw all reasonable inferences therefrom in the light most

favorable to the plaintiffs."  *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

"[D]isputes over material issues of fact cannot be resolved on a motion to dismiss . . . but must be

reserved for resolution at trial by the appropriate trier."  5 ARTHUR R. MILLER ET AL., FEDERAL

PRACTICE AND PROCEDURE § 1277 (3d ed. 2019).

### 1.     Futility for Failure to Allege Factual Support

First, the UG argues the amended complaint is futile because it does not rectify the issue regarding multiplicity of claims and contains only conclusory allegations that fail to support his supervisory liability and failure to intervene claims.  (ECF 38, at 5-7.)  Having reviewed the proposed second amended complaint and drawing all reasonable inferences therefrom in the light most favorable to Dickerson, the court finds that the UG has not met its burden to demonstrate that these claims are futile for reasons of multiplicity and failure to allege factual support.  Dickerson has alleged some factual support and may be able to muster additional factual support for these claims as the case progresses.  The claims are sufficiently plausible that the court cannot find they are futile.

### 2.     Futility for Failure to Show Diligence

The UG also argues that an amendment to name the UG and York is futile because Dickerson knew or should have known of their proper names before filing his original and first amended complaints and Dickerson "has not shown how he diligently yet unsuccessfully attempted to learn or type the name of proper defendants before filing this action."  The UG notes that "the Tenth Circuit has clearly held that changes that were known or should have been known by the plaintiff do not constitute good cause to amend a complaint."  (ECF 38, at 7.)  But this argument goes to the "good cause" standard that only applies in the Rule 16 context, and the court has already found that Dickerson met that standard.  So the only remaining obstacle to the court allowing Dickerson leave to amend is the more lenient Rule 15 standard, which instructs the court to grant leave "freely . . . when justice so requires."

To the extent the UG's argument on this point could be construed as an untimeliness argument under Fed. R. Civ. P. 15, the court agrees that Dickerson's motion to amend was

7

untimely.   The UG first raised the issues concerning Dickerson's improper naming of the defendants in this action when it filed a motion to dismiss on August 14.   The prudent course of action for Dickerson would have been to promptly file the current motion to amend, at least as it pertains to correcting the named defendants the UG and York, even if Dickerson did not yet have the information needed as to the unnamed defendants.   Instead, Dickerson spent the ensuing four and a half months with briefing on the motion to dismiss, participating in a scheduling conference with the court, and exchanging initial discovery.   All the while, the progress of this case has been hung up over the improper naming issue.   But although untimeliness alone may be a sufficient basis to deny leave to amend, the most important consideration is whether the amendment would prejudice the nonmoving party.   *Minter v. Prime Equip. Co.*, 451 F.3d 1196-1207-08 (10th Cir. 2006).   Prejudice is typically found only where "the amendment affects the defendants 'in terms of preparing their defense to the amendment.'"   *Id.* at 1208.   Here, there is no undue prejudice in allowing the belated amendment because any such prejudice can be cured via application of the relation-back doctrine (discussed below).   The court therefore will not deny Dickerson leave to amend solely on the grounds of untimeliness.

### 3.      Futility for Lack of Relation Back

Lastly, the UG argues that neither the UG, York, nor the individual defendants were properly named as defendants before the statute of limitations had run and at least York and the individual defendants had no notice of this action prior to the statute of limitations expiring.   (ECF 38, at 8-9 (incorporating arguments in its motion to dismiss briefing).)   Essentially, the UG argues the proposed amended pleading is futile because the proposed amendments do not relate back to the filing of the original complaint, so the claims against the newly named defendants are time barred as beyond the statute of limitations.

Federal Rule of Civil Procedure 15(c) "governs when an amended pleading 'relates back' to the date of a timely filed original pleading and is thus itself timely even though it was filed outside an applicable statute of limitations." *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010). Specifically, this rule provides in relevant part as follows:

> (c) RELATION BACK OF AMENDMENTS.
> . . . .
> (1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:
> . . . .
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1).

### *The UG and York*

As to proposed defendants the UG and York, the court turns first to the preliminary requirement in Rule 15(c)(1)(C) that the party to be brought in by amendment, "within the period provided by Rule 4(m) for serving the summons and complaint: (i) received such notice of the action that it will not be prejudiced in defending on the merits." This requirement is sufficiently met that the court cannot find the proposed amendment would be futile. Within the Rule 4(m) period, Dickerson's attorney emailed the legal division for the UG on June 28 asking if it would accept service of the amended complaint and summons against "the county of Wyandotte, City of Kansas City, KS, interim Police Chief Young." Also within the Rule 4(m) period, the UG's legal division responded on July 6, directing counsel to serve the clerk with the summons and complaint "for the UG and the City and for Interim Chief York (not Young)." Once served, the misnamed

defendants promptly retained counsel who has entered his appearance in this action and has taken reasonable steps to protect their interests, as well as those of the UG.  Accordingly, there is nothing from which the court can find based on the present record that the UG and York would be prejudiced in defending on the merits.

The parties' arguments focus more on the requirement in subparagraph (ii) that the party to be brought in by the amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity."  Dickerson argues the misnaming of the UG and York in the original and first amended complaints are exactly the kind of "mistake" contemplated by Fed. R. Civ. P. 15(c)(1)(C)(ii) for allowing an amendment to correct and relate back to the date of the original complaint.  (ECF 32, at 5.)  The UG counters that Dickerson "should have, and certainly could have, known" the proper name of the UG and York, yet he failed to name them before the statute of limitations ran.  (ECF 38, at 7-8.)  To the extent the UG tries to focus on what *the plaintiff* knew or should have known, the Supreme Court has rejected this argument under the relation-back doctrine.

In *Krupski v. Costa Crociere S. p. A*., Krupski filed a negligence action against Costa Cruise Lines after she broke her leg while on board one of its cruise ships.  560 U.S. 538, 541 (2010).  Krupski later learned that the proper defendant was Costa Crociere S. p. A. ("Costa Crociere").  *Id.* at 543-544.  So Krupski amended her complaint to add Costa Crociere, which then moved to dismiss on the ground that Krupski's claim against it was barred by the statute of limitations because it did not relate back under Rule 15(c) and was therefore untimely.  *Id.* at 543-45.  The district court agreed and dismissed the case because Krupski knew or should have known the proper party's identity before filing suit inasmuch as Krupski's cruise ship ticket contained information relevant to the proper defendant's identity.  *Id*. at 545.  The Eleventh Circuit affirmed.

10

*Id*. at 546.  The Supreme Court reversed, explaining that the lower courts were incorrect in focusing on Krupski's knowledge in determining whether she had made a mistake under Rule 15(c)(1)(C)(ii).  *Id.* at 548.  The Supreme Court directed courts to focus instead on whether the prospective defendant knew or should have known that it would have been named as a defendant but for a mistake.  *Id.* at 548-49.

Here, the record is clear that the UG knew it would have been named as a defendant but for Dickerson's mistake.  Again, Dickerson's attorney emailed the UG's legal division asking if it would accept service of the amended complaint and summons against "the county of Wyandotte" and the "City of Kansas City, KS."  And the UG's legal division responded by directing counsel to serve the clerk with the summons and complaint "for the UG and the City."

It is less clear whether York knew or should have known that he would have been named as a defendant but for Dickerson's mistake.  Dickerson filed his original complaint against the Chief of Police Karl Oakman.  (ECF 1.)  But, as it turned out, Karl Oakman was sworn in as Chief of Police a few days *after* the incident at issue in the complaint (*see* ECF 8, at 10), so Dickerson filed an amended complaint naming the *Interim* Chief of Police, who preceded Oakman.  (ECF 4.)  But even then, Dickerson used an incorrect last name for the Interim Chief.  He used the last name "Young" and asked the UG's legal division whether it would accept service of the summons and amended complaint against "Police Chief Young."  In response, the UG's legal division directed counsel to serve the clerk with the summons and complaint "for Interim Chief York (not Young)."  Based on this record, it is plausible, at least for purposes of a Rule 12(b)(6) futility analysis, that York knew or should have known that Dickerson intended to sue him but for a mistake.

In sum, to the extent that Dickerson seeks to name the UG and York as defendants, the court finds the UG has not shown that Dickerson's proposed amendment is futile.  Dickerson has

presented facts suggesting that his claims against them may relate back to the filing of his original

complaint, which was before the two-year statute of limitations expired.  In making this finding,

the court is not making a final determination as to whether Dickerson's claims against these two

defendants do in fact relate back under Rule 15(c)(1)(C).  That is an issue to be resolved on the

merits by the district judge, who may ultimately decide to the contrary when presented with more

robust arguments based on a fully developed factual record.  But, at least at this procedural

juncture, Dickerson is entitled to proceed on his claims against these two defendants given the

liberal standards governing leave to amend because the record suggest that it is plausible that his

claims against them may relate back.  Accordingly, the court grants Dickerson's motion to amend

to the extent he seeks to name the UG and York as defendants.

### *Individual Defendants*

Dickerson also seeks to add the KCKPD officers that allegedly engaged in unconstitutional

seizures, arrest, and use of force while arresting him, as well as supervisory officials of the

KCKPD.  He did not know the identity of these individuals when he filed his original or amended

complaints, so he called them "Uniformed Officers" and "Uniformed Defendants" in his previous

complaints.  Dickerson now seeks to amend his complaint to add them as named defendants, as he

contends he learned that information when the UG served Rule 26(a)(1) initial disclosures.

But such amendments do not relate back because "a plaintiff's lack of knowledge of the

intended defendant's identity is not a 'mistake' concerning the identity of the proper party'" within

the meaning of Rule 15(c)(1).  *Garrett v. Fleming*, 362 F.3d 692, 696 (10th Cir. 2004).  This

holding in *Garrett* differentiates John Doe cases, like this one, from *Krupski* such that the Tenth

Circuit's decision in *Garrett* is controlling here.  In *Krupski*, the plaintiff knew of two potential

parties when she filed her lawsuit, but she sued the wrong party and corrected the mistake only

after the statute of limitations had expired.  Although the plaintiff knew the identity of the proper

party when she filed her original complaint, the Supreme Court held that this constituted a mistake

because the defendant "knew or should have known that it would have been named as a defendant

but for an error." *Krupski*, 560 U.S. at 548.  Here, unlike the plaintiff in *Krupski*, Dickerson did

not make a "mistake" in naming the John Doe defendants; he simply did not know their identities

and did not attempt to discover their identities. And because Dickerson waited until two days

before the limitations period expired to file his original complaint, he left himself with no time to

amend the complaint upon finally discovering the true identities of the John Doe defendants.

Numerous circuit courts continue to recognize this so-called "John Doe rule" after the

Supreme Court's decision in *Krupski*.  *See, e.g., Herrera v. Cleveland*, 8 F.4th 493 (7th Cir. 2021),

*cert. denied*, 142 S. Ct. 1414, 212 L. Ed. 2d 403 (2022); *Winzer v. Kaufman Cnty.*, 916 F.3d 464,

471 (5th Cir. 2019); *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019); *Heglund v. Aitkin Cnty.*,

871 F.3d 572, 579-80 (8th Cir. 2017); *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013); *Smith

v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012).  Likewise, district courts within the Tenth

Circuit have continued to recognize the viability of *Garrett* and the "John Doe rule" after the

*Krupski* decision.  *See, e.g., Livingston v. Unified Gov't of Wyandotte Cnty.*, No. 23-3032-EFM-

BGS, 2023 WL 7221078, at *4 (D. Kan. Nov. 2, 2023) (not allowing a plaintiff to rely on relation

back to substitute a named party for a Doe defendant, citing *Garrett*); *George on Behalf of Est. of

Bradshaw v. Beaver Cnty. by & Through Beaver Cnty. Bd. of Commissioners*, No. 2:16-CV-1076

TS, 2019 WL 181354, at *2 (D. Utah Jan. 11, 2019) (same); *Trujillo v. City & Cty. of Denver*, No.

14-cv-02798, 2016 WL 5791208, at *9 (D. Colo. Sept. 7, 2016) (same); *Butchard v. Cnty. of Dona

Ana*, 287 F.R.D. 666, 676 (D.N.M. 2012) (same); *Martinez v. Gabriel*, No. 10-cv-02079, 2012 WL

1719767, at *2 (D. Colo. May 15, 2012) (same).

Although *Krupski* shifted the focus from whether a plaintiff actually made a mistake, as the issue is phrased in *Garrett*, 362 F.3d at 696 ("a plaintiff's lack of knowledge of the intended defendant's identity is not a 'mistake'"), to whether the defendant knew or should have known that a plaintiff made a mistake, *Krupski*, 560 U.S. at 548-50 ("repose would be a windfall for a prospective defendant who understood, or who should have understood, that he escaped suit during the limitations period only because the plaintiff misunderstood a crucial fact about his identity"), the rationale in *Garrett* still holds:  a plaintiff may not rely on the relation back doctrine to substitute a named party for a Doe defendant because there was never a "mistake" regarding the defendant's identity.   The defendant's identity was simply unknown.   Thus, *Krupski* did not abrogate *Garrett*'s holding that an amendment to replace a John Doe defendant is made, not to correct a mistake, but to correct a lack of knowledge.  It is therefore not a "mistake" under Rule 15(c)(1).

Dickerson argues the claims against the previously unnamed John Doe defendants should be allowed to proceed against the proposed individual defendants because "they almost certainly had notice of the claims and there is an identity of interest" between the individual defendants and the UG and York.  (ECF 31; ECF 32, at 6.)  But there is nothing in the record from which the court could find that the proposed individual defendants received notice of the present action within the Rule 4(m) period, or that the individual defendants knew or should have known that the action would have been brought against them but for a "mistake" concerning their identity, as required by Rule 15(c)(1)(C)(ii).  Dickerson suggests that counsel for the UG and York will "undoubtedly represent" the individual defendants and "undoubtedly informed them long ago" about this lawsuit (ECF 32, at 5-6), but this assumption is insufficient to show "notice of the action" under Rule 15(c)(1)(C).  Unlike in *Krupski*, Dickerson has not pointed to a document or other communication

14

to suggest that the individual defendants would have been alerted that they are proper parties for suit.  Nor has Dickerson shown that the identities of the individual defendants are so closely intertwined with the UG or the Interim Chief of Police that they should have known that they were the proper parties for suit.

Finally, Dickerson argues the court should equitably toll the two-year statute of limitations against the newly-named individual defendants "because of Defendants' continual and ongoing efforts to hide" their identities.  (ECF 32, at 6.)  State law generally governs the tolling of the limitations period in § 1983 cases "'except that federal law might also allow additional equitable tolling in rare circumstances.'" *Caballero v. Wyandotte County Sheriff's Dep't*, 789 Fed. App'x 684, 686 (10th Cir. 2019) (quoting *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008)).  A plaintiff is entitled to equitable tolling only if the plaintiff shows (1) that it has been pursuing its rights diligently, and (2) that some extraordinary circumstance stood in its way and prevented timely filing.  *Holland v. Fla.*, 560 U.S. 631, 649 (2010).  A litigant seeking equitable tolling has the burden of proving these two elements.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Dickerson has not met his burden.  Dickerson did not diligently pursue his rights, nor has he demonstrated that defendants' actions amount to an extraordinary circumstance that would entitle him to equitable tolling of the limitation period.  Indeed, courts have not looked kindly upon equitable tolling claims when a plaintiff knows his rights were violated but waits until the last minute to file his complaint.  *See, e.g.*, *McClain v. Roberts*, 304 P.3d 364 (Kan. Ct. App. 2013) (no equitable tolling for § 1983 claim based on transfer to different prison in retaliation for exercising free-speech rights because the plaintiff "obviously knew of his transfer when it happened" but failed to timely file suit before the limitations period).  Here, Dickerson waited to

file his complaint until June 8, 2023, two days before the two-year statute of limitations expired, even though he knew his rights were violated almost two years prior on June 10, 2021. Dickerson does not present anything from which the court could find that he even attempted to discover the "Uniformed Officers" identities before the limitations period expired, let alone that defendants prevented him from obtaining this information during the limitations period. The court therefore concludes that Dickerson has not met his burden to justify equitably tolling the statute of limitations.

Accordingly, based on the present record, the court finds the UG has shown that Dickerson's proposed amendment to add the individual defendants is futile because it would not relate back to the original complaint, so the claims against the individual defendants would be barred by the statute of limitations. The court therefore recommends that the district judge deny his motion to amend to the extent it seeks to add these individual defendants as parties.

## III.   MOTION TO STAY FURTHER PROCEEDINGS AND DEADLINES

On December 4, the UG filed a motion to stay all current deadlines pending a ruling on its Motion to Dismiss Plaintiff's First Amended Complaint. (ECF 20.) The UG asks the court to delay those deadlines until the district judge rules on its pending motion to dismiss (ECF 7). In other words, the UG is seeking a temporary stay of discovery while the dispositive motion is pending.

The power to stay discovery is firmly vested in the trial court's sound discretion. *See Kutilek v. Gannon*, 132 F.R.D. 296, 297 (D. Kan. 1990). The court "may exercise the power to stay to provide economy of time and effort for itself and for counsel and litigants appearing before the court." *Universal Premium Acceptance Corp. v. Oxford Bank & Trust*, No. 02-2448-KHV, 2002 WL 31898217, at *1 (D. Kan. Dec. 10, 2002) (citing *Landis v. N. Am. Co.*, 299 U.S. 248,

255 (1936)).  In exercising this discretion, the court "must weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254-55.  The Tenth Circuit, however, has cautioned that "[t]he right to proceed in court should not be denied except under the most extreme circumstances." *Commodity Futures Trading Comm'n v. Chilcott Portfolio Mgmt., Inc.*, 713 F.2d 1477, 1484 (10th Cir. 1983) (citing *Klein v. Adams & Peck*, 436 F.2d 337, 339 (2d Cir. 1971)).  Thus, the general policy in the District of Kansas is not to stay discovery simply because a dispositive motion is pending.  *See Wolf v. United States*, 157 F.R.D. 494, 495 (D. Kan. 1994).  An exception may be warranted "where the case is likely to be finally concluded as a result of the ruling thereon; where the facts sought through uncompleted discovery would not affect the resolution of the motion; or where discovery on all issues of the broad complaint would be wasteful and burdensome." *Id*. at 495 (citing *Kutilek*, 132 F.R.D. at 297-98).

Although the UG's motion recites these three exceptions, the UG does not meaningfully articulate how any of these exceptions apply.  Rather, the UG generally argues that Federal Rules of Civil Procedure 26(a)(1), 33, and 34 apply only to "a party," so discovery cannot meaningfully proceed at this time against the UG and York, as they are not parties to this action.  The court is not persuaded that a stay is warranted, particularly now that the court has ruled that Dickerson may amend his complaint to add the UG and York as defendants.  Accordingly, discovery against them can meaningfully proceed.  Further, Dickerson's filing of a revised Second Amended Complaint may well result in the district judge denying the UG's motion to dismiss as moot.  Accordingly, the court denies the UG's motion to stay.

\* \* \* \* \*

Pursuant to 28 U.S.C. § 636(b)(1), FED. R. CIV. P. 72(b)(2), and D. KAN. RULE 72.1.4(b), Dickerson may file written objections to this report and recommendation within fourteen days after

17

being served with a copy.  If Dickerson fails to file objections within the fourteen-day time period, no appellate review of the factual and legal determinations in this report and recommendation will be allowed by any court.  *See In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000).

**IT IS THEREFORE RECOMMENDED** that the presiding district judge deny Dickerson's Motion for Leave to File His Second Amended Complaint (ECF 31) in part to the extent that Dickerson seeks to add individual defendants Officer Johnell Daniels, Officer Patrick Fanning, Sergeant Carl Webb, Sergeant Michael Golden, Officer Daniel Albright, Officer Nathan Gumpert, and Captain John Diaz as defendants.

**IT IS FURTHER ORDERED** that Dickerson's Motion for Leave to File His Second Amended Complaint (ECF 31) is granted in part to the extent that Dickerson may file a Third Amended Complaint adding defendants Unified Government of Wyandotte County/Kansas City, Kansas and Interim Chief of Police Michael York as defendants.  Dickerson must revise his proposed Third Amended Complaint to remove the names of the other proposed individual defendants listed above.  Dickerson must file a revised Third Amended Complaint within three calendar days from the date of this order.

**IT IS FURTHER ORDERED** that the Unified Government of Wyandotte County/Kansas City, Kansas's Motion to Stay Further Proceedings and Deadlines (ECF 20) is denied.

**IT IS SO ORDERED.**

Dated February 15, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

18